**STATE of Minnesota, Respondent,**

v.

**Richard James JUREK, Appellant.**

No. C5–85–210.

Court of Appeals of Minnesota.

Oct. 29, 1985.

Hubert H. Humphrey, III, State Atty. Gen., Edward P. Starr, St. Paul City Atty., Arthur M. Nelson, Asst. City Atty., St. Paul, for respondent.

Tristam O. Hage, Minneapolis, for appellant.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

This is an appeal from a January 25, 1985 judgment of conviction by jury verdict for the offense of driving a motor vehicle with an alcohol concentration exceeding .10 in violation of Minn.Stat. § 169.121, subd. 1(d) (1984). Appellant seeks reversal of the conviction and a new trial based on (1) denial of his right to recorded voir dire without incurring the cost thereof, and (2) prejudicial supervision of jury deliberations. Appellant claims that the cumulative effect of the trial court's actions operated to deprive him of his constitutional right to a fair trial. We reverse and remand for a new trial.

## FACTS

On March 17, 1984, appellant was stopped by a police officer after the officer had observed erratic driving behavior. The officer noticed a strong odor of alcohol on appellant's breath, that his speech was slurred and that his eyes appeared very bloodshot. When appellant was asked to get into the squad car, the officer observed that he was having great difficulty with his balance.

After appellant was taken to police headquarters, he agreed to submit to a breathalyzer test. He was placed in a room directly behind the front desk and observed for approximately 40 minutes by the arresting officer. Appellant was left unsupervised for a short period of time while the officer made testing arrangements. The test registered a blood alcohol reading of .20.

Following a number of continuances, a Rasmussen hearing was held on May 17, 1984. The Rasmussen hearing judge denied Jurek's motion to strike breathalyzer evidence, finding proper administration of the implied consent advisory and voluntary submission to the test. Over the next six months two mistrials were granted.

On January 22, 1985, during voir dire examination, appellant requested a verbatim record of the proceedings as provided under Minn.R.Crim.P. 26.02, subd. 4(1). The trial judge stated that appellant was entitled to a verbatim recording but would also incur the expense of the procedure. Appellant noted his objection and the voir dire examination proceeded off the record.

During the course of the trial, breathalyzer results and a police report were admitted into evidence over appellant's hearsay objection. Appellant's objection was alternatively grounded on the unreliability of the test, failure to discover chewing tobacco in appellant's mouth, interrupted observation of appellant and expired simulator solution.

On January 24, 1985, at approximately 4 p.m., a bailiff was sworn and the jury retired to deliberate. The trial judge informed counsel that he was leaving the courthouse within 15 minutes and that the jury was to be released at 5 p.m. The trial judge further stated that if the jury had any questions, they would be addressed the following morning. Appellant objected to

the early discharge and the unavailability of the trial judge for questions.

During the next 30 minutes a second bailiff, not sworn by the court, relieved the appointed bailiff. At approximately 4:45 p.m. the jury asked for a partial re-reading of testimony. The second bailiff told the jury that they should abide by their own recollection of the evidence and the judge's instructions. The jury continued to deliberate without reaching a verdict and was dismissed shortly after 5 p.m.

The bailiff's communication was elicited by appellant's counsel immediately thereafter and was duly noted to the trial judge the following morning accompanied by motions for judgment of acquittal and for mistrial. Both motions were denied. Appellant then requested an *in camera* hearing on the bailiff's communication with the jury. This request was also denied. The jury continued to deliberate and approximately two hours later reached its verdict.

### ISSUES

1. Did the trial court err in denying recorded voir dire examination unless appellant incurred the cost of the procedure?

2. Did the trial court's supervision of jury deliberations constitute prejudicial and reversible error?

### ANALYSIS

1. **Recorded Voir Dire.** A litigant's right to recorded voir dire examination is set out in Minn.R.Crim.P. 26.02, subd. 4(1) which provides in part: "A verbatim record of the voir dire examination shall be made at the request of either party." Appellant argues that the word "shall" removes the issue from the trial court's discretion and creates an absolute right to the procedure. We agree.

■ The plain and unambiguous wording of the rule establishes an absolute right to request and receive voir dire examination on the record. The trial court's stipulation that appellant incur the expense of the procedure is unsupported by any statutory authority. The availability of a court re-porter does not function independently from a trial judge's calendar. It is a function that coincides with the day-to-day procedures before a particular judge. Requiring appellant to incur this financial burden as a condition to recorded voir dire presumptively violates the plain wording of Rule 26.02, subd. 4(1). The trial court's failure to adhere to the rule is error.

2. **Prejudicial Supervision of Jury Deliberations.** Appellant alleges the following trial irregularities which we address on review: (a) substitution of bailiffs supervising the jury without court permission; (b) communication by the unsworn bailiff to the jury; (c) nonavailability of the trial judge for jury questions; and (d) the trial court's failure to conduct an *in camera* hearing to determine if any prejudice resulted from the communication.

Appellant argues that the cumulative effect of these trial irregularities operated to deprive him of a fair trial. We agree. We note from the outset that the state chose not to respond in this case, waiving response by brief and oral argument.

■ A bailiff is the custodian of a jury whose duty is to guard the jury in its deliberations, not guide it. *State v. Broughton*, 154 Minn. 390, 192 N.W. 118 (1923). A bailiff's duty commences when he is sworn by the court and continues until the jury reaches a verdict. The record before us indicates that a substitution of bailiffs took place while the jury was deliberating and without knowledge of the trial court. We are at a loss to understand how a bailiff sworn by the court could engage another bailiff to supervise the jury without prior court permission.

■ The record before us further illustrates that a communication between the second bailiff and the jury took place prior to rendition of a verdict. In *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), the Supreme Court established that a private communication or contact with a juror, directly or indirectly, about a pending matter is deemed presumptively prejudicial. *Id.* at 229, 74 S.Ct.

at 451. When such a communication occurs, the government must rebut the presumption and establish that the contact with the jury was harmless to the defendant. *Id. See Wheaton v. United States,* 133 F.2d 522 (8th Cir.1943).

More recent decisions have addressed the impact of a court officer's communication to the jury during its deliberations. The leading case is *Parker v. Gladden,* 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966). In that case a bailiff commented that the defendant was "wicked" and "guilty" in the presence of jurors. The Court reversed the defendant's conviction, holding that the unauthorized communication created such a probability of prejudice that it inherently denied the defendant a constitutionally fair trial.

In *Stayberg v. Henderson,* 277 Minn. 16, 151 N.W.2d 290 (1967), the Minnesota Supreme Court found prejudicial error when a bailiff failed to inform the trial judge of a jury request for further instructions. In remanding the case for further proceedings on the plaintiff's motion for new trial, the court stated:

> Since the bailiff is the legal vehicle for communication between the jury and the judge, evidence with relation to the breakdown of that means of communication should not be considered as being locked up in the verdict so as to be beyond the reach of inquiry.

*Id.* at 21–22, 151 N.W.2d at 293.

■ In this case, not only did an unsworn bailiff communicate with the jury, he compounded the error by commenting on a substantive matter bearing on the case. Here, the bailiff told the jury to rely on its own recollection of the evidence and the trial court's instructions. This is contrary to the express language of Minn.R. Crim.P. 26.03, subd. 19(2)1 which provides:

> If the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, *the jurors shall be conducted to the courtroom.* The court, after notice to the prosecutor and defense counsel, *may have the requested parts of the testimony read to the jury and permit the jury to re-examine the requested material admitted into evidence.* (emphasis supplied)

We have plainly stated that a substantive communication by a bailiff to a jury is prejudicial and reversible error. *Lundebrek v. Chamberlain Oil Co.,* 361 N.W.2d 885 (Minn.Ct.App.1985); *Kukowski v. Wm. Miller Scrap Iron & Metal Co.,* 353 N.W.2d 638 (Minn.Ct.App.1984). In *Kukowski,* the trial court transcribed jury instructions over the phone and directed a clerk to read the instructions to the jury. Noting our disapproval for such a procedure, we found the clerk's omission of an instruction to be "crucial error." *Id.* at 644. We also distinguished the types of communication a clerk may make with a jury:

> The only authority for the clerk of court to communicate with the jury would relate to administrative matters such as housing, meal arrangements, emergencies, requests to speak with the court, and the return of the verdict. These are routine communications essential to the orderly administration of justice.

*Id.* at 643. In *Lundebrek,* we addressed a clerk's rereading of jury instructions after an inconsistent verdict. Citing *Kukowski,* we held that the communication constituted prejudicial error, a presumption unrebutted by the state. *See Cronquist v. City of Minneapolis,* 258 Minn. 30, 32, 102 N.W.2d 512, 514 (1960); *see also Sabraski v. Northern States Power Co.,* 304 N.W.2d 635, 637 (Minn.1981). Here, the record is void of any evidence offered by the state to rebut the presumption of prejudicial communication.

We further note that the trial judge in this case was unavailable for questions when the jury initially retired. In *Kukowski,* we stated that such circumstances were to be avoided:

> The judge's failure to be present to personally answer the jury's questions may have inhibited additional jury questions on important aspects of the case.

*Kukowski,* 353 N.W.2d at 643.

■ We are also disturbed by the trial court's failure to provide adequate safe-

guarding procedures urged by appellant prior to and after the jury's verdict.

> [T]he proper procedure for reviewing a jury verdict is to determine from juror testimony what outside influences were improperly brought to bear upon the jury and then estimate their probable effect on a hypothetical average jury.

*State v. Cox*, 322 N.W.2d 555, 559 (Minn. 1982). *See Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 104 N.W.2d 301 (1960). It is well established in this jurisdiction that third party communication with the jury that is presumptively prejudicial necessitates a *Schwartz* hearing if, as here, counsel promptly seeks this device after knowledge of the communication. *Gersdorf v. R.D. Werner Co., Inc.*, 316 N.W.2d 517 (Minn.1982); *State v. Hill*, 287 N.W.2d 918 (Minn.1979); *compare Pomani by Pomani v. Underwood*, 365 N.W.2d 286 (Minn.Ct.App.1985) (witness' prejudicial conduct not considered when counsel fails to request *Schwartz* hearing).

In the present case appellant promptly informed the court of the bailiff's remark prior to the jury's verdict. The trial judge acknowledged the existence of a communication but believed it to be centered on a juror's lost ring. This case is thus distinguishable from cases finding a *Schwartz* hearing unnecessary when a trial judge is unequivocal in his recollection of facts concerning prejudicial conduct. *See Zimmerman v. Witte Transportation Co.*, 259 N.W.2d 260 (Minn.1977).

The trial court here did seek to elicit information from the jury after rendition of its verdict by asking the panel if its decision was prejudiced by the bailiff's remark. Before the jury could respond, however, the trial judge stated:

> What the bailiff told you, to rely on your own recollection. Frankly that's what I would have told you so I don't see anything harmful about it, but I just thought I would ask.

The above remark was inappropriate. Since the trial court's prejudicial supervision of jury deliberations compels a new trial, we need not address the other issues raised by appellant.

### DECISION

Substantive remarks by an unsworn bailiff to a jury without consent of the trial court is prejudicial and reversible error. We reverse and remand for a new trial. The trial court is instructed to grant appellant recorded voir dire without cost.

Reversed and remanded.